STATE (GEORGE BARNES & AL., RELATORS,) *v.* BROOKS SHATTUCK.

Police courts have authority to commit to the House of Reformation for a term longer than the alternative imprisonment which may be awarded.

In the case of a conviction for an offence which might by law be punished by imprisonment in the State Prison, common jail, or house of correction, the offender may be sent to the House of Reformation, although the alternative sentence actually awarded was the payment of a fine only.

A commitment to the House of Reformation, without any alternative sentence, is irregular; but can be corrected only by proceedings instituted directly for that purpose and not upon *habeas corpus.*

The case sufficiently appears in the opinion of the court.

*G. Y. Sawyer,* for petitioners.

I. The intention of the act of 14th July, 1855, Pamph. Laws, p. 1553, ch. 1660, establishing the House of Reformation, is to provide a place of imprisonment for juvenile offenders, as a substitute for the State Prison, jail, &c., to which, under the sentence pronounced by law against their offences, they would otherwise be committed.   This is apparent from the whole general drift of the act, as well as from numer-

ous specific provisions. Thus in sec. 4, p. 1554, the conviction must be of an offence " punishable by imprisonment," and the alternative sentence is to be "to the House of Reformation, or to such punishment"—manifestly such punishment by imprisonment—" as would have been awarded if this act had not passed." So in sec. 6, p. 1555, in case the trustees deem it inexpedient to receive the offender, or he is found to be incorrigible, &c., he is to be committed to the State Prison, jail, &c., under the original mittimus, in pursuance of the alternative sentence. So, too, in sec. 7, all commitments to the institution must be for a term not longer than during minority, or " during the term of commitment," that is, to the State Prison, jail, &c., " to which they were sentenced." The Act of July 3d, 1862, Pamph. Laws, p. 2596, ch. 2595, also clearly implies that the sentence must be imprisonment in the State Prison, jail, &c., as prescribed by other laws, with the alternative of commitment to the House of Reformation for the same term.

II. By State provision relative to the House of Reformation no new punishment is prescribed, nor is any additional power conferred on courts or magistrates in regard to punishing offences, except to commute by the *alternative sentence* the penalty of imprisonment authorized by other laws into confinement in this institution for the term prescribed, subject to the limitation that it shall be for no longer than during minority. The power claimed and exercised in these cases, is to sentence directly to the House of Reformation, or to sentence to pay a fine, and, in the alternative, to this institution during minority. The legislature could not have intended to subject to confinement during minority a child of 12 or 15 years, merely because he is sentenced to pay a fine of $1.00, and fails to pay it, or because he has committed a slight offence subjecting him to a brief term in the House of Correction, more especially when in the care of one so committed, such extensive powers are conferred upon the trustees, in reference to binding him out during the whole term. Sec. 6, p. 1555.

III. Sentence of confinement in the House of Reformation " during minority" is not authorized by law. It should be for a fixed and definite period not longer than during minority. This is to be fixed precisely by the sentence. The superintendent and trustees are not to be required to ascertain at their peril the precise day when the minority terminates.

IV. In the cases of Cole, McCarty, the Lords, Dowd, Lattimore and Tebbetts, no alternative sentence appears to have been pronounced, and, in the case of Tebbetts, no offence is set forth, and no term of confinement is limited in the sentence.

*William P. Wheeler*, for respondent.

BELLOWS, J. This is an application for a writ of *habeas corpus*, to bring up the body of William Mahan, and others, alleged to be imprisoned, and unlawfully restrained of their liberty, in the House of Reformation for Juvenile and Female Offenders, at Manchester, in the County

of Hillsborough, by Brooks Shattuck, the Superintendent of that institution.

The case of William Mahan, as made by the proofs, is, that, having been convicted before the police court of the city of Manchester, on the fourteenth day of May, A. D., 1862, of stealing twenty-five cents, he was sentenced to be confined in the House of Reformation, aforesaid, during the period of his minority, or to pay a fine, for the use of the city of Manchester, of ten dollars; and to pay treble the value of the property stolen to the owner, and costs of prosecution, and stand committed until sentence be performed; and that the said Mahan is now confined in said House of Reformation, under said sentence.

In some of the other cases the alternative sentence was to the House of Correction for six months; in others, a small fine; and in others, to the House of Reformation alone, without any alternative sentence; and of the latter, some of the offences were larceny, and some for being stubborn children. Assuming that these sentences to the House of Reformation were for periods longer than the term of imprisonment in the common jail, house of correction, or State Prison, by which the offences were punishable, one question applicable to them all, is, whether the police court has power to sentence such offenders to a confinement in the House of Reformation longer than the alternative sentence which might be imposed.

By the express terms of the statute establishing such House of Reformation, laws of 1855, ch. 1660, when boys, under eighteen years of age, (since made 17 years,) or females of any age, are convicted of *any crime* known to the laws of the State, punishable by imprisonment, except by imprisonment for life, the court or justice, as the case may be, before whom such conviction may be had, may, at their discretion, sentence such boy or girl to the House of Reformation, or to such punishment as is now provided by law; and if to the House of Reformation, then, in the alternative, to the House of Reformation, or to such other punishment. Section 7 of the same act provides that no commitment shall be for a longer term " than during their minority, or during the term of commitment to which they were sentenced, nor less than one year." The law of June 26, 1858, ch. 2087, provides that when any boy or female, liable to be sentenced to the House of Reformation in the alternative, " shall be convicted of the offence charged, the court or justice, before whom the conviction is had, may sentence said boy or female to said House of Reformation, during the minority of the offender, or for any intermediate term, not less than one year."

It is clear, then, that justices of the peace and police courts have power to commit to the House of Reformation, and for offences punishable by imprisonment in the common jail and the house of correction; and it is also clear that they have, equally with this court, the power to commit to the House of Reformation during the minority of the offender, or, at their discretion, for any intermediate term, not less than one year.

The power conferred upon this court, and upon justices of the peace, and police courts, is, in the most unqualified terms, to sentence boys under the age of seventeen years, and females of any age who are convict-

ed of *any crime* known to the laws of the State and punishable by imprisonment, except imprisonment for life, to the House of Reformation; and the question is, whether, from the nature of the law or any of its provisions, a limitation of this power founded upon the duration of imprisonment in the common jail, house of correction, or State Prison, is to be implied; or, in other words, whether the courts or justices of the peace can commit to the House of Reformation for a longer period than the alternative imprisonment to which the offenders are subjected.

Upon a careful examination of all the legislation upon the subject, we are satisfied that there is no such limitation, but that police courts and justices of the peace, equally with this court, have power to commit offenders to the House of Reformation, in their discretion, for a longer period than the alternative imprisonment; and this, we think, accords both with the spirit of the law and with its express provisions.

The institution is established "for the instruction, employment, and reformation of juvenile and female offenders." The trustees are empowered to discharge such offenders when reformed, or to remand them to prison when incorrigible; and to bind them out as apprentices, in like manner as overseers of the poor are authorized to do. They are, also, required to cause such boys and girls to be instructed in piety and morality, and in such branches of useful knowledge as shall be adapted to their capacity; and also, to instruct them in some art or trade, or some branch of useful industry.

These provisions, and especially those which authorize the binding out as apprentices, and the discharge of reformed offenders, place this institution upon a footing widely different from the State Prison, common jail, or house of correction, and naturally suggest a distinction in the duration of the term of commitment.

So, too, justices of the peace and police courts are empowered to commit to the House of Reformation, during minority, or for any intermediate term, not less than one year; and yet, in most cases, the power of justices of the peace and police courts to sentence to imprisonment in the common jail, is limited to periods much less than one year; especially is this true in respect to the class of offences most likely to be committed by the young, such as the numerous offences against the police of towns, assaults and batteries, profane cursing and swearing, and the like; and a similar limitation exists on the power of this court, in large classes of cases, such as assaults and batteries, fornication, injuring or defacing tombs or monuments, cruelty to animals, and the like.

If, then, the commitment to the House of Reformation can be for no longer term than the alternative imprisonment which may be imposed, it is quite obvious, that, in respect to the greater part of those offences most likely to be committed by the young, there is no power to send these offenders to the House of Reformation at all, inasmuch as they can be sent there for no term less than one year; a conclusion which is totally inconsistent with the explicit language of the act, that if any boy or girl be " convicted of *any offence* known to the laws of this State, and punishable by imprisonment," he or she may be committed to the House of

Reformation; and, as we think, is equally repugnant to the spirit and object of the law.

There are some provisions in this law which may seem not to be in entire harmony with the construction which we adopt. Indeed, the law obviously exhibits some of the imperfections incident to legislation upon a new subject, but we think its true spirit and object can nevertheless readily be discerned.

Among the provisions which may seem to be not quite clear, is one to be found in sec. 7 of ch. 1660, enacting that the " commitment shall be for a term not longer than during minority, or during the term of commitment to which they were sentenced."

But we regard this as designed to reach the case where the term of imprisonment in the common jail, house of correction, or the State Prison, would extend beyond the minority of the offender; in which case, the confinement in the House of Reformation might also be so extended.

We are aware, also, that the law of July, 1862, ch. 2595, provides that in case an offender is remanded by the trustees to the jail, house of correction, or State Prison, in pursuance of the terms of the alternative sentence, the term that he has already been confined in the House of Reformation shall be deducted from the term of imprisonment under the alternative sentence.

This, it is true, puts the confinement in the House of Reformation upon the same footing as the imprisonment under the alternative sentence, but it is for the single purpose of fixing what should be deducted in case the offender was remanded. It is apparent that some deduction should be made, and no better rule could perhaps be suggested than to deduct the whole period of confinement in the House of Reformation.

But, still we do not think that a rule so applied to a special case, is sufficient to control the construction to be given to the express language of the act.

Our conclusion, therefore, is, that the police court had authority to commit to the House of Reformation for a term longer than the alternative imprisonment.

In some of the cases where the writ of *habeas corpus* is now prayed for, the alternative sentence is not imprisonment, but the payment of a fine, although, in some or all of those instances, the court had *power* to punish by imprisonment in the common jail or house of correction. And a question may be made, whether such offences are to be regarded as *punishable* by imprisonment within the meaning of the law relating to the House of Reformation, the provision being, that, on conviction of any offence *punishable* by imprisonment, &c., the offender may be sent to the House of Reformation.

There are many cases where the offence may be punished by imprisonment, or fine, as for the wilful and malicious burning of grain, hay, &c., or destruction of telegraph wires or fixtures, killing or maiming of cattle, horses, &c., giving or receiving mortgages, or other conveyances of property to defraud creditors, obtaining goods by false pretenses, malicious trespasses, obstructing an officer in the execution of process, as-

saults and batteries, and numerous offences against the police of towns, including mobs and tumults in streets, singing obscene songs, defacing buildings, trees, shrubs, &c., using juggling or unlawful games, &c., discharging guns, or beating drums in streets, indecent exposure of person, and drunkenness, &c.

So, larceny and many other offences are punishable by fine *and* imprisonment. And the question is, whether the term *punishable*, as used in the statutes under consideration, was designed to embrace all cases where the courts have the power to punish by imprisonment, or only those where the punishment is imprisonment *alone*. Construing the term according to its usual meaning, it would embrace all cases where the sentence *might* be imprisonment; and considering the large class of offences where the punishment may be by imprisonment or fine, including a great proportion of those most likely to be committed by the young, we think there is nothing in those statutes that requires a construction of the terms used, different from their ordinary signification.

It is true, there is a provision in section six of the original act, which seems to assume that the alternative sentence will always be imprisonment; it being provided that if any offender shall be found incorrigible, or his or her continuance in the House of Reformation prejudicial to the management and discipline thereof, and the trustees so certify, such offender shall be committed to the jail, house of correction, or State Prison, in pursuance of the alternative sentence. But, looking at the general design of the law, we think this provision is not of such character as to restrict the power of sending to the House of Reformation, to such offences only as were punishable by imprisonment, and that alone. Indeed, one great object of this institution is to avoid the exposure of the young to the influence of the more hardened offenders; but, if the construction were to prevail which would limit the power to send to the House of Reformation, to those graver offences which are punished by imprisonment alone, this object would, to a great extent, be defeated, and there would be sent to this institution few besides those whose offences were of such character as to leave but a slender hope of reformation. Besides, it might be urged with some plausibility, that, in cases where the alternative sentence was a fine only, the provision for remanding an incorrigible offender would not be wholly inoperative, inasmuch as such offender is usually, by the sentence, to stand committed until the sentence is performed.

But, however this may be, we are inclined to regard this section as imperfect and inadvertently framed, rather than as indicating a legislative intention to establish the limitation in question.

We should hold, therefore, that the police court had power to commit to the House of Reformation in a case where, by law, the alternative sentence might be fine or imprisonment, even although such alternative sentence was actually a fine only.

There is another class of cases where, according to the copies of record furnished us, there was no alternative sentence whatever. For aught we can see this is an irregularity, for the statute in question, sec. 4, expressly requires that the sentence should be in the alternative—to the

House of Reformation, or to such imprisonment as would have been awarded if the act had not been passed.

The object of this enactment is readily seen in the provision for remanding incorrigible offenders, and nothing is suggested to our minds as a satisfactory reason for omitting the alternative sentence.

The question, then, is, whether on *habeas corpus* these judgments can be examined.

If the police court had jurisdiction of the matter embraced in these causes, this court will not, on *habeas corpus*, revise the judgment. *State* v. *Towle*, 42 N. H. 541, 2, 3 ; *Ross & Riley's case*, 2 Pick. 166 ; and *Riley's case* 2 do. 171 ; *Adams* v. *Vose*, 1 Gray, 51.

If, in such case, the proceedings are irregular or erroneous, the judgment is voidable, and not void, and stands good until revised or annulled in a proper proceeding instituted for that purpose ; but when it appears that the magistrate had no jurisdiction the proceedings are void, and the respondent may be discharged upon *habeas corpus*. *State* v. *Towle*, before cited ; Kellogg Ex parte, 6 Vt. 509 ; see also, *State* v. *Richmond*, 6 N. H. 232 ; *Burnham* v. *Stevens*, 33 N. H. 247 ; *Hurst* v. *Smith*, 1 Gray, 49, 50.

*Riley's case*, 2 Pick. 171, was where there was a sentence for an additional punishment, which was not rightly awarded, but the court held that the remedy was by writ of error, and not by *habeas corpus*.

In these cases the police court had jurisdiction to hear and determine these complaints, and to sentence the respondents, and for any error or irregularity in the sentence, the remedy must be by appeal and not by *habeas corpus*.

This is clearly the doctrine of *Riley's case*, before cited, and within the principles laid down in *State* v. *Towle*.

The same views would seem to apply also to the objection, if it be one, that it is irregular to sentence offenders to the House of Reformation, during minority, instead of a definite and fixed period.

The result is, that, with these views, writs of *habeas corpus* in the classes of cases considered by us would avail nothing, and are, therefore, denied.